Matt Adams
Leila Kang
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Wilson RODRIGUEZ MACARENO,<br><br>                                Plaintiff,<br><br>            vs.<br><br>Joel THOMAS, in his official and individual capacities; Craig GARDNER, in his official and individual capacities; Peter TIEMANN, in his official and individual capacities; Arthur STEPHENSON, in his official and individual capacities; and CITY OF TUKWILA,<br><br>                                Defendants. | No. _____<br><br><br>**COMPLAINT** |

## <u>INTRODUCTION</u>

1.      Plaintiff Wilson Rodriguez Macareno ("Mr. Rodriguez") was unlawfully arrested

after calling the police for protection from a trespasser on his property. After releasing the

accused trespasser with a warning, the Tukwila Police Department officers who responded to

Mr. Rodriguez's call instead arrested Mr. Rodriguez. The Tukwila Police Department arrested

Mr. Rodriguez without probable cause or judicial warrant, but instead solely to facilitate civil

immigration enforcement. The Tukwila Police Department has no legal authority to investigate

and enforce civil immigration laws.

COMPLAINT - 1

2.      On February 8, 2018, around 5:30 a.m., Mr. Rodriguez was at his home located in Tukwila, Washington, when he observed a trespasser who had jumped over his fence onto the yard in front of his house. Afraid for his safety, Mr. Rodriguez called 911.

3.      Defendants Stephenson, Tiemann, Gardner, and Thomas (collectively, "Defendant Officers")—police officers for Defendant City of Tukwila—arrived at Mr. Rodriguez's home and found an individual trespassing on the property. They questioned, but ultimately did not arrest, the trespasser.

4.       Defendant Officers instead arrested Mr. Rodriguez, after submitting his identifying information by radio to dispatch and learning that Mr. Rodriguez was unlawfully present in the country. Defendants had no reason to believe that Mr. Rodriguez had committed a criminal violation. The dispatch did not reveal any judicial warrant for Mr. Rodriguez's arrest.

5.      Defendants seized Mr. Rodriguez for the sole purpose of investigating his immigration status, handcuffing Mr. Rodriguez outside his home while contacting ICE.

6.      Defendant Officers then volunteered to deliver Mr. Rodriguez to the ICE office. Defendant Officers placed Mr. Rodriguez, still handcuffed, in the backseat of a Tukwila Police Department patrol vehicle. Defendant Thomas, accompanied by Defendant Gardner, drove Mr. Rodriguez to the Seattle ICE Field Office, where ICE officers promptly detained Mr. Rodriguez.

7.      Mr. Rodriguez was subsequently transferred to the Northwest Detention Center in Tacoma, Washington, and detained, where he remains to this date, separated from his partner, his one-year-old baby, and his three-year-old twins.

8.      Mr. Rodriguez brings this action under 42 U.S.C. § 1983 to challenge Defendants' unlawful arrest.

COMPLAINT - 2

**JURISDICTION AND VENUE**

9.      This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), and 1343 (civil rights).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Mr. Rodriguez's claims occurred in the Western District of Washington.

11.     Declaratory relief is authorized under 28 U.S.C. §§ 2201, 2202, and Federal Rule of Civil Procedure 57.

**PARTIES**

12.     Plaintiff Wilson Rodriguez Macareno is a resident of the City of Tukwila in King County, Washington. He is Latino.

13.     At all times relevant to this action, Mr. Rodriguez was a "person within the jurisdiction" of the United States for the purposes of 42 U.S.C. § 1983.

14.     At all times relevant to this action, Mr. Rodriguez was a "person" for the purposes of the Fourth Amendment to the United States Constitution.

15.     Defendant Joel Thomas was, at all times relevant to this action, a law enforcement officer employed by the City of Tukwila as an officer of the Tukwila Police Department. He is sued in his individual and official capacities.

16.     Defendant Craig Gardner was, at all times relevant to this action, a law enforcement officer employed by the City of Tukwila as an officer of the Tukwila Police Department. He is sued in his individual and official capacities.

COMPLAINT - 3

17.     Defendant Peter Tiemann was, at all times relevant to this action, a law enforcement officer employed by the City of Tukwila as an officer of the Tukwila Police Department. He is sued in his individual and official capacities.

18.     Defendant Arthur Stephenson was, at all times relevant to this action, a law enforcement officer employed by the City of Tukwila as an officer of the Tukwila Police Department. He is sued in his individual and official capacities.

19.     At all times relevant to this action, Defendants Thomas, Gardner, Tiemann, and Stephenson were all persons acting under color of state or local law.

20.     Defendant City of Tukwila is a municipal corporation, located in King County in the state of Washington. One division within Defendant City of Tukwila is the Tukwila Police Department,[1] which employs police officers to, among other things, enforce local and state laws. The Tukwila Police Department is also responsible for establishing policies for training and supervising Tukwila police officers.

21.     At all times relevant to this action, Defendant City of Tukwila was a person acting under color of state or local law.

22.     At all times relevant to this action, Defendant City of Tukwila employed Defendants Thomas, Gardner, Tiemann, and Stephenson as police officers and authorized them to act as its agents.

---

[1]     The terms "City of Tukwila" and "Tukwila Police Department" are used interchangeably throughout the complaint—i.e. City of Tukwila refers to the Tukwila Police Department, and vice versa.

COMPLAINT - 4

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104

# FACTUAL ALLEGATIONS

**A.      The 911 Call and On-Scene Investigation**

23.      On Thursday, February 8, 2018, at around 5:30 a.m., Mr. Rodriguez was at his home in Tukwila, Washington.

24.      While preparing to leave for work, Mr. Rodriguez looked outside and saw an unknown person on his property next to his car.

25.      Mr. Rodriguez's partner and three children were inside the home, and Mr. Rodriguez was concerned the trespasser would try to enter the home.

26.      Previously in 2016, a man had broken into Mr. Rodriguez's home while his pregnant partner and two children were present. When Mr. Rodriguez arrived home on that day, he telephoned the police and made an official report.

27.      Remembering the prior break-in, and wanting to protect his family, Mr. Rodriguez called 911 for assistance. He explained to the 911 dispatcher there was a trespasser on his property.

28.      During Mr. Rodriguez's call with the 911 dispatcher, his co-worker arrived at his home and began speaking with the trespasser.

29.      Upon information and belief, Defendants Tiemann, Stephenson, and Gardner arrived on the scene a few minutes after the 911 call ended.  They spoke with the individual suspected of trespassing on Mr. Rodriguez's property, as well as with Mr. Rodriguez.

30.      Upon information and belief, Defendant Thomas arrived at the scene a few minutes later and asked Mr. Rodriguez for his identification. Mr. Rodriguez provided his valid Washington State driver's license to Defendant Thomas and continued to cooperate with the investigation by providing details regarding the trespass incident.

COMPLAINT - 5

31.     Upon information and belief, Defendant Thomas also requested identification from Mr. Rodriguez's co-worker, who was present at the scene.

**B.     Defendants' Seizure of Mr. Rodriguez for Purposes of Civil Immigration Enforcement**

32.     Upon information and belief, Defendant Thomas relayed Plaintiff Rodriguez's identifying information over radio dispatch, as well as the information of his co-worker.

33.     Upon information and belief, Defendant Thomas received a response from dispatch a few minutes later. The dispatcher reported that Mr. Rodriguez was unlawfully present in the United States due to a prior order of removal or exclusion.

34.     Upon information and belief, neither Defendant Thomas nor any of the other Defendant Officers received any information regarding any judicial arrest warrants for Mr. Rodriguez.

35.     Upon information and belief, Defendant Thomas returned to his patrol vehicle for further investigation of Mr. Rodriguez's immigration status.

36.     Upon information and belief, immediately before returning to his vehicle, Defendant Thomas requested Defendant Tiemann to stay with and keep watch over Mr. Rodriguez.

37.     Upon information and belief, Mr. Rodriguez was surrounded by at least two of the Defendant Officers immediately outside his home while Defendant Thomas investigated his immigration status.

38.     Upon information and belief, Mr. Rodriguez remained surrounded by Defendant Officers.

COMPLAINT - 6

39.     Upon information and belief, the trespassing suspect was released with a warning not to return to the property.

40.     However, Mr. Rodriguez was not free to leave the encounter with Defendant Officers even after they had completed their investigation of the trespass on Mr. Rodriguez's property.

41.     Defendant Officers had no probable cause or reason to believe that Mr. Rodriguez had committed any criminal offense.

42.     In fact, upon information and belief, one of the Defendant Officers verbally stated to Mr. Rodriguez they were calling to see if immigration wanted him, but Defendant Officers did not have charges to detain him.

43.     Yet almost immediately after stating there were no charges against Mr. Rodriguez, Defendant Gardner, Defendant Tiemann, and Defendant Stephenson placed Mr. Rodriguez in handcuffs, telling him they would detain him until they heard from immigration.

44.     Upon information and belief, Defendant Officers searched Mr. Rodriguez's person and confiscated his wallet after handcuffing him.

45.     Upon information and belief, once inside his patrol vehicle, Defendant Thomas looked on his mobile computer. Data transmitted by the A Central Computerized Enforcement Service System ("ACCESS") Operator showed an "administrative warrant removal from the United States" for Mr. Rodriguez pursuant to the National Crime Information Center ("NCIC") database.

46.     Tukwila Police officers have no authority to enforce an administrative warrant issued by ICE officers. An immigration warrant is not signed off by a judge or neutral arbiter,

COMPLAINT - 7

and is directed only to federal immigration officers authorized to enforce federal civil immigration laws.

47.     Upon information and belief, Defendant Thomas called the ICE Law Enforcement Support Center ("LESC") and was informed that a representative would call him back.

48.     Upon information and belief, at some later point ICE officer Mark Bailey called Defendant Thomas and requested that Defendant Officers take Mr. Rodriguez into custody on behalf of ICE.

49.     Upon information and belief, Defendant Thomas agreed to take custody of Mr. Rodriguez and voluntarily transport him to the ICE field office located at 12500 Tukwila International Boulevard, Seattle, Washington, 98168.

50.     Upon information and belief, Mr. Rodriguez was already detained in handcuffs while Defendant Thomas awaited communication from ICE.

51.     Upon information and belief, Defendant Gardner escorted Mr. Rodriguez into a Tukwila Police Department patrol vehicle. Mr. Rodriguez remained handcuffed.

52.     Upon information and belief, Defendant Thomas and Defendant Gardner then transported Mr. Rodriguez to the Seattle ICE field office. Mr. Rodriguez remained handcuffed while inside the patrol vehicle.

53.     Upon information and belief, Defendant Thomas and Defendant Gardner directly handed Mr. Rodriguez over to ICE officers, unlocking his handcuffs only after an ICE officer grabbed Mr. Rodriguez's arm.

54.     Upon information and belief, Defendant Thomas and Defendant Gardner then entered inside the ICE field office to request a copy of an immigration "detainer" for Mr. Rodriguez.

COMPLAINT - 8

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104

55.     Upon information and belief, and ICE officer advised that he did not yet have a detainer but could obtain one to provide to Defendant Officers.

56.     Upon information and belief, Defendant Thomas and Defendant Gardner provided ICE officer Mark Bailey with Mr. Rodriguez's street address.

57.     Upon information and belief, Defendant Thomas informed the ICE officer that he ran the license information for Mr. Rodriguez, then volunteered the information of another individual—Mr. Rodriguez's co-worker.

58.     Upon information and belief, Defendant Thomas gave the ICE officer the co-worker's full name and showed him a photograph of his driver's license.

59.     Upon information and belief, Defendant Gardner informed the ICE officer Tukwila Police Department dispatch had not returned any results on the co-worker, but complained to the ICE officer that Washington State issues IDs for anyone in the state.

60.     Later that day, ICE transferred Mr. Rodriguez to the Northwest Detention Center in Tacoma, Washington, where he has since been held, separated from his partner, three-year old twins, and one-year old baby.

61.     Mr. Rodriguez has consequently been unable to support his partner and his three children.

62.     Additionally, Mr. Rodriguez has suffered emotional distress due to his interactions with Defendants. He feels betrayed by law enforcement officials whom he trusted to keep him and his family safe from another potential break-in.

**C.     Tukwila Police Department Policies and Training**

63.     In 2012, the Supreme Court of the United States held that state and local law enforcement officers are not authorized to arrest individuals for purposes of civil immigration

COMPLAINT - 9

enforcement, except in specific and limited circumstances in which the state or local government has entered into a formal agreement with the federal government under 8 U.S.C. § 1357(g)(1). *Arizona v. United States*, 567 U.S. 387, 407-09 (2012).

64.     In 2012, the Ninth Circuit further clearly established state and local law enforcement officers violate the Fourth Amendment to the United States Constitution when they initiate or prolong a seizure solely to investigate whether an individual is unlawfully present in the United States. *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) ("[T]he Fourth Amendment does not permit a stop or detention based solely on unlawful presence.").

65.     At the time of Mr. Rodriguez's seizure, it was clearly established the same is true under article I, section 7 of the Constitution of the State of Washington. On August 16, 2013, the Pierce County Superior Court of Washington found it was a violation of article I, section 7 of the Washington constitution for local law enforcement officers to prolong a detention solely to question an individual about their immigration status. The court clarified this was the case even if those officers have the legal authority to seize the individual for an offense they are authorized to enforce, but have decided not to seize the individual for that offense. *See Ramirez-Rangel v. Kitsap County*, No. 12-2-09594-4, 2013 WL 6361177, at *2 (Wash. Super. Ct. Aug. 16, 2013).

66.     Indeed, following the Piece County Superior Court's decision in *Ramirez-Rangel*, the ACLU of Washington ("ACLU-WA") and Northwest Immigrant Rights Project ("NWIRP") sent a letter to local law enforcement agencies across the state advising these agencies of the decision.

COMPLAINT - 10

67.     On the day of Mr. Rodriguez's arrest, the Tukwila Police Department, through their Facebook account, stated that Defendants were informed that Mr. Rodriguez had a warrant, verified that warrant, and delivered Mr. Rodriguez to the issuing authority.

68.     ICE warrants are administrative forms issued by deportation officers.  They have not been signed by a judge and do not authorize local law enforcement to make arrests.

69.     On February 9, 2018, the Tukwila Police Department issued a follow-up statement on their Facebook account. This statement explained that Chief of Police Bruce Linton had, after the incident, "issued a directive to the entire Tukwila Police Department that, going forward, officers will not be responsive to administrative warrants issued by the U.S. Immigration and Customs Enforcement, nor will it collaborate with the agency."

70.     At the time of Mr. Rodriguez's arrest, the Tukwila Police Department had written policies precluding officers from engaging in immigration enforcement activities absent exceptional circumstances. Specifically, and consistent with the Fourth Amendment and article I, section 7, the policies prohibited officers from stopping or detaining individuals "solely for alleged undocumented entry into the U.S. unless the undocumented entry is committed in the officer's presence."  *See* Tukwila Police Dep't, *Tukwila PD Policy Manual*, § 409.7 (December 11, 2017). The policy manual explained "Federal Courts have consistently held that undocumented presence is not a crime but a federal civil violation only enforceable by federal officers." *Id.*; *see also id.* § 411.3.1 ("Unless immigration status is relevant to another criminal offense or investigation (e.g., harboring, smuggling, terrorism), the fact that an individual is suspected of being an undocumented alien shall not be the sole basis for contact, detention or arrest.").

COMPLAINT - 11

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104

71.     The Tukwila Police Department also had written policies prohibiting officers from "attempt[ing] to determine the immigration status of crime victims and witnesses or take enforcement action against them absent exigent circumstances or reasonable cause to believe that a crime victim or witness is involved in violating criminal laws." *Id.* § 411.4.

72.     Still, the Tukwila Police Department also had policies at the time of the seizure that allowed Tukwila police officers to enforce civil immigration laws. For example, Section 409.7 of the Tukwila Police Department Policy Manual provided, "After a lawful detention or criminal arrest, officers may detain foreign nationals solely for alleged undocumented presence in the U.S. if the U.S. Immigration and Customs Enforcement (ICE) is contacted and can respond to take custody within a reasonable time." *See also id.* at § 411.2 ("When assisting ICE at its specific request, or when suspected criminal violations are discovered as a result of inquiry or investigation based on probable cause originating from activities other than the isolated violations of Title 8, U.S.C., §§ 1304, 1324, 13,25 and 1326, this department may assist in the enforcement of federal immigration laws.").

73.     Upon information and belief, Defendants' actions resulted from Tukwila Police Department's conflicting policies when they enforced civil immigration laws and seized Mr. Rodriguez in order to investigate his immigration status and deliver him to ICE.

74.     Upon information or belief, these policies have not been rescinded or revised since Mr. Rodriguez's seizure. *See* Tukwila Police Dep't, Tukwila PD *Policy Manual* § 411.2 (February 25, 2018).

75.     Upon information and belief, the Defendant City of Tukwila did not adequately train or supervise its police officers to prevent them from discriminating against Mr. Rodriguez on the ground of race, ethnicity, national origin, or immigration status.

COMPLAINT - 12

## CAUSE OF ACTION

### COUNT I
### Seizure Without Probable Cause - Fourth Amendment; 42 U.S.C. § 1983
### (Against Defendants Thomas, Gardner, Tiemann, and Stephenson, in their individual and official capacities, and Defendant City of Tukwila)

76.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

77.     Defendant Officers seized Mr. Rodriguez, preventing him from leaving the scene, placing him in handcuffs, and transporting him in their patrol vehicle to the ICE field office.

78.     Defendants' seizure of Mr. Rodriguez lasted approximately one hour, until they drove Mr. Rodriguez to the ICE field office in Tukwila, Washington, and transferred him to ICE custody.

79.     The law was clearly established prior to December 11, 2017, that none of the Defendant Officers, as local police officers, had any lawful authority to seize Mr. Rodriguez or to extend any seizure for purposes of investigating his civil immigration status.

80.     The law was also clearly established prior to December 11, 2017, that, for state and local law enforcement officers, a seizure without probable cause or at least reasonable suspicion of a crime constitutes an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

81.     Mr. Rodriguez called 911 to report a trespasser on his property. Mr. Rodriguez provided Defendants with a valid Washington State driver's license. There was no judicial arrest warrant authorizing Defendants to arrest Mr. Rodriguez. Defendants had no reason to suspect Mr. Rodriguez was involved in any criminal activity and had no probable cause to place him under arrest.

COMPLAINT - 13

82.     Defendants' seizure of Mr. Rodriguez was not justified by probable cause nor reasonable suspicion of any criminal activity.

83.     Mr. Rodriguez had the right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures.

84.     Defendants' actions constituted a seizure of Mr. Rodriguez's person.

85.     Defendants' seizure of Mr. Rodriguez's person was unreasonable.

86.     Defendants' actions subjected Mr. Rodriguez to a deprivation of his rights as secured by the Fourth Amendment.

87.     Defendant Officers' conduct resulted from Defendant City of Tukwila's Police Department's conflicting policies and their failure to train police officers regarding civil immigration violations.

88.     Mr. Rodriguez was injured by Defendants' unconstitutional seizure and the Tukwila Police Department's unconstitutional policies, which deprived him of his Fourth Amendment rights.

89.      Defendants' conduct of subjecting Mr. Rodriguez to an unconstitutional seizure was motivated by evil motive or intent, or was recklessly or callously indifferent to his Fourth Amendment rights.

90.     Mr. Rodriguez suffered emotional and economic harm as a result of Defendants' unconstitutional seizure.

91.     Because the policies permitting Tukwila police officers to prolong a seizure solely to facilitate investigations of civil immigration violations are still in place, absent an injunction enjoining the operation of these policies, it is likely that Mr. Rodriguez will be unconstitutionally seized again in the future.

COMPLAINT - 14

92.     As a result of Defendants' Fourth Amendment violations, Mr. Rodriguez is entitled to damages, an injunction, and declaratory relief.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief as follows:

a.      Trial by judge on all claims so triable;

b.      Compensatory damages from Defendants in an amount to be proved at trial;

c.      Punitive damages from Defendants;

d.      A declaration that Defendants violated Mr. Rodriguez's rights under the Fourth Amendment to the United States Constitution;

e.      A declaration that Defendant City of Tukwila's policies permitting its officers to enforce civil federal immigration laws when requested to do so by federal immigration officers violate the Fourth Amendment to the United States;

f.      A declaration that Defendants are not authorized to arrest or detain individuals for suspected unauthorized presence in the United States;

g.      An injunction prohibiting Defendants detaining or arresting and individual to investigate whether the person is unlawfully present in the country or is sought by federal immigration officers;

h.      Attorneys' fees and costs of litigation pursuant to the provisions of Title 28 of the United States Code and 42 U.S.C. § 1988;

i.      Pre-judgment and post-judgment interest on any award of damages; and

j.      Such other relief as this Court deems just and equitable.

Respectfully submitted this 21st day of March, 2018.

COMPLAINT - 15

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104

**NORTHWEST IMMIGRANT RIGHTS PROJECT**

s/Matt Adams
Matt Adams, WSBA #28287

s/Leila Kang
Leila Kang, WSBA #48048

s/Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA #46987

615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org
leila@nwirp.org
glenda@nwirp.org

*Attorneys for Plaintiff*

COMPLAINT - 16