The Honorable Richard A. Jones

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Wilson RODRIGUEZ MACARENO,<br><br>Plaintiff,<br><br>v.<br><br>Joel THOMAS, in his official and individual capacities; Craig GARDNER, in his official and individual capacities; Peter TIEMANN, in his official and individual capacities; Arthur STEPHENSON, in his official and individual capacities; and CITY OF TUKWILA,<br><br>Defendant. | No. C18-421 RAJ<br><br>MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF BY AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON<br><br>**NOTE ON MOTION CALENDAR: NOVEMBER 16, 2018** |

## I.      INTRODUCTION

American Civil Liberties Union of Washington ("ACLU-WA") hereby respectfully submits this Motion for Leave to File an *Amicus Curiae* Brief.  A copy of the proposed brief is attached as Exhibit A to this motion.  ACLU-WA conferred with counsel for the parties in writing before filing this Motion.  Counsel for Plaintiff Wilson Rodriguez Macareno ("Mr. Rodriguez") did not oppose the filing of this amicus brief.  Counsel for Mr. Rodriguez asked ACLU-WA to contact Defendants separately.  ACLU-WA contacted Counsel for Defendants, who declined to consent.

ACLU-WA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF
(No. C18-421 RAJ) — 1
4817-0510-2201v.5 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## II.     IDENTITY AND INTEREST OF AMICUS CURIAE

ACLU-WA is a statewide, nonpartisan, nonprofit organization of over 80,000 members and supporters dedicated to the preservation of civil liberties.  ACLU-WA works in courts, legislatures, and communities to preserve the individual rights and liberties guaranteed to all people by the Constitution and laws of the United States.  ACLU-WA frequently participates as a party and *amicus curiae* in cases involving civil liberties and criminal justice issues, including unlawful detention and immigrants' rights.  In order to promote its organizational mission and the interests of its members, ACLU-WA engages in community education and has led local efforts to inform government officials and others about the issues implicated in this case.

## III.     REASONS WHY MOTION SHOULD BE GRANTED

District courts have "broad discretion" to appoint amicus curiae.  *Skokomish Indian Tribe v. Goldmark*, 2013 WL 5720053, at *1 (W.D. Wash. Oct. 21, 2013) (quoting *Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir. 1982)).  "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'"  *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (quoting *Cobell v. Norton,* 246 F. Supp. 2d 59, 62 (D.D.C. 2003)).

The Court should exercise its discretion to permit ACLU-WA to file the attached amicus brief.  As a nonprofit public interest legal organization dedicated to the preservation of civil liberties, ACLU-WA has a strong interest in ensuring law enforcement agencies in Washington do not exceed their authority under federal and Washington state law.  ACLU-WA will draw upon its expertise to provide a criminal justice perspective in this case, so as to fulfill "the classic role of amicus curiae by assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration."  *Miller-Wohl Co. v. Comm'r of Labor & Indus., State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982).  ACLU-WA respectfully submits that its experience and perspective as a

ACLU-WA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF
(No. C18-421 RAJ) — 2
4817-0510-2201v.5 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

nonprofit public interest legal organization representing and advising individuals on civil liberties, criminal justice, and immigration matters will assist the Court in addressing the legal authority—or lack thereof—which Defendants rely on to support their unlawful detention of Mr. Rodriguez.

## IV.   CONCLUSION

For these reasons, ACLU-WA respectfully requests the Court grant it leave to file the amicus curiae brief attached as Exhibit A.

DATED this 29th day of October, 2018.

DAVIS WRIGHT TREMAINE LLP
Cooperating Attorneys for ACLU-WA

By *s/Kenneth E. Payson*
  Kenneth E. Payson, WSBA # 26369

By *s/Jennifer K. Chung*
  Jennifer K. Chung, WSBA # 51583
  1201 Third Avenue, Suite 2200
  Seattle, WA  98101-3045
  Tel: (206) 622-3150
  Fax: (206) 757-7700
  E-mail: kenpayson@dwt.com
            jenniferchung@dwt.com

ACLU-WA FOUNDATION

By *s/Eunice Cho*
  Eunice Cho, WSBA # 53711
  901 Fifth Avenue, Suite 630
  Seattle, WA 98164
  Tel:  (206) 624-2184
  Fax:  (206) 624-2190
  E-mail:  echo@aclu-wa.org

*Attorneys for Proposed Amicus Curiae American Civil Liberties Union of Washington*

ACLU-WA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF
(No. C18-421 RAJ) — 3
4817-0510-2201v.5 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2018, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the attorneys of record registered on the CM/ECF system.  All other parties (if any)

shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 29th day of October, 2018.

_s/Jennifer K. Chung_____

Jennifer K. Chung, WSBA #51583

ACLU-WA'S MOTION FOR LEAVE TO FILE AMICUS BRIEF
(No. C18-421 RAJ) — 4
4817-0510-2201v.5 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Wilson RODRIGUEZ MACARENO,

                          Plaintiff,

       v.

Joel THOMAS, in his official and individual
capacities; Craig GARDNER, in his official
and individual capacities; Peter TIEMANN, in
his official and individual capacities; Arthur
STEPHENSON, in his official and individual
capacities; and CITY OF TUKWILA,

                          Defendant.

No. C18-421 RAJ

BRIEF OF AMICUS CURIAE
AMERICAN CIVIL LIBERTIES
UNION OF WASHINGTON IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS
THOMAS, GARDNER, TIEMANN,
AND STEPHENSON'S MOTION
FOR PARTIAL SUMMARY
JUDGMENT REGARDING
QUALIFIED IMMUNITY

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ)
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................... 1

II.  IDENTITY AND INTEREST OF AMICUS CURIAE ................................... 1

III.  BACKGROUND ...................................................................................... 2

IV.  ARGUMENT ........................................................................................... 2

    A.  Defendants' Actions Were Not Authorized by Federal Law. ............................. 2

        1.  The ICE Form Did Not Authorize Defendants to Detain Mr. Rodriguez. ........ 2

            a.  ICE Forms Do Not Authorize State Officials to Effect a Criminal Arrest or Seizure Because the Forms Are Not Issued by a Neutral Magistrate and Do Not Show Probable Cause That the Individual Committed a Crime ............. 2

            b.  Defendants Could Not Rely on ICE Forms to Detain Mr. Rodriguez. ....... 5

        2.  No Valid Federal Statutory Authority Allowed Defendants to Detain Mr. Rodriguez. ........ 6

            a.  Generally Only Federal Law Enforcement Officers Are Authorized to Arrest and Detain Individuals Who Are Suspect of Civil Immigration Violations .......... 6

            b.  Defendants' Detention Did Not Satisfy Any of the Limited Statutory Exceptions that Authorize State Law Enforcement Officers to Arrest and Detain Individuals Based on Civil Immigration Violations .......... 7

            c.  Defendants' Detention Did Not Qualify As Cooperation Under § 1357(g)(10)(B). ............ 8

    B.  Defendants' Detention Was Not Authorized Under Washington State Law. .......... 9

        1.  Washington Law Did Not Authorize Defendants to Detain Mr. Rodriguez. ........ 9

        2.  Defendants Lacked the Required Probable Cause of a Felony to Justify a Warrantless Arrest ............... 10

V.  CONCLUSION ....................................................................................... 12

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — i
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arizona v. United States*,
  567 U.S. 387 (2012) ................................................................................... *passim*

*Brendlin v. California*,
  551 U.S. 249 (2007) .................................................................................................2

*City of El Cenizo, Tex. v. Texas*,
  890 F.3d 164 (5th Cir. 2018) ...................................................................................9

*Coolidge v. New Hampshire*,
  403 U.S. 443 (1971) .................................................................................................3

*Galarza v. Szalczyk*,
  745 F.3d 634 (3d Cir. 2014) ....................................................................................4

*Heikkinen v. United States*,
  355 U.S. 273 (1958) ...............................................................................................11

*Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*,
  296 F. Supp. 3d 959 (S.D. Ind. 2017) ..................................................................4, 8

*Miranda-Olivares v. Clackamas County*,
  2014 WL 1414305 (D. Or. Apr. 11, 2014) .............................................................4

*Moreno v. Napolitano*,
  213 F. Supp. 3d 999 (N.D. Ill. 2016) ......................................................................4

*Ochoa v. Campbell*,
  266 F. Supp. 3d 1237 (E.D. Wash. 2017) .........................................................3, 4, 6

*Roy v. County of Los Angeles*,
  2018 WL 914773 (C.D. Cal. Feb. 7, 2018) ("*Roy I*") .............................................4

*Roy v. County of Los Angeles*,
  2018 WL 3439168 (C.D. Cal. July 11, 2018) ("*Roy II*") ....................................4, 9

*Santos v. Frederick Cty. Bd. of Comm'rs*,
  725 F.3d 451 (4th Cir. 2013) .......................................................................... *passim*

*United States v. Miszczuk*,
  847 F. Supp. 2d 227 (D. Mass. 2012) ................................................................11, 12

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seatle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*United States v. Ramirez,*
   473 F.3d 1026 (9th Cir. 2007) ............................................................................5

*United States v. Xiang Wang,*
   2014 WL 6472857 (D. Kan. Nov. 18, 2014) .......................................................11

*United States v. Yan Naing,*
   820 F.3d 1006 (8th Cir. 2016) ...........................................................................12

**State Cases**

*Esparza v. Nobles County,*
   No. 53-CV-18-751 (Minn. Dist. Ct. Oct. 19, 2018) .......................................4, 9

*Lunn v. Commonwealth,*
   477 Mass. 517 (2017) ......................................................................................4, 9

*Ramirez-Rangel v. Kitsap County,*
   No. 12-2-09594-4 (Wash. Sup. Ct., Aug. 16, 2013) ............................................9

*State v. Chenoweth,*
   160 Wn.2d 454 (2007) ........................................................................................9

*State v. Scott,*
   93 Wn.2d 7 (1980) ............................................................................................10

**Federal Statutes**

8 U.S.C.
   § 1103(a)(10) .....................................................................................................7
   § 1226 ...............................................................................................................3
   § 1227(a) ..........................................................................................................11
   § 1253(a) ..........................................................................................................11
   § 1253(a)(1) .................................................................................................11, 12
   § 1253(a)(1)(A) .................................................................................................11
   § 1357 ...............................................................................................................3
   § 1357(a) ...........................................................................................................7
   § 1357(a)(2) .......................................................................................................7
   § 1357(g) ...................................................................................................3, 7, 8
   § 1357(g)(1) .......................................................................................................7
   § 1357(g)(1)-(5) .................................................................................................3
   § 1357(g)(2) .......................................................................................................7
   § 1357(g)(10)(B) ................................................................................................8

Immigration and Nationality Act (INA) ...........................................................6, 7

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**State Statutes**

Revised Code of Washington
   10.31.100 ................................................................................................10
   71.05.230 ................................................................................................12

**Regulations**

8 C.F.R.
   § 287.1(g) ...................................................................................................7
   § 287.5(c)-(e) .............................................................................................7
   § 287.5(e)(2) ...............................................................................................3
   § 287.5(e)(3) ...............................................................................................3
   § 287.7 .........................................................................................................4

**Constitutional Provisions**

U.S. Constitution amendment IV...............................................................2, 5

Washington State Constitution Article I, § 7............................................5, 9

**Other Authorities**

Statement of Washington State Sheriffs' Ass'n at 1 (Mar. 31, 2017),
   https://bit.ly/2OY4NV1 ............................................................................4

U.S. Department of Homeland Security, Guidance on State and Local
   Governments' Assistance in Immigration Enforcement and Related Matters
   at 13-14, https://bit.ly/2AtytR4................................................................8

U.S. Immigration & Customs Enforcement, Delegation of Immigration
   Authority Section 287(g) Immigration and Nationality Act (last updated
   Aug. 10, 2018), https://www.ice.gov/287g .........................................3, 8

Washington State Office of the Attorney General, Guidance Concerning
   Immigration Enforcement at 26 (April 2017), https://bit.ly/2zgWglg
   ("Washington Attorney General Guidance") ................................5, 10

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — iv
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## I.      INTRODUCTION

Plaintiff Wilson Rodriguez Macareno ("Mr. Rodriguez"), a resident of Tukwila, called 911 because he trusted the Tukwila Police Department to protect him.  But when they arrived, the City of Tukwila and its officers ("Defendants") violated that trust by detaining him solely on their suspicion that Mr. Rodriguez had committed a civil immigration violation.  Defendants had no authority under federal or state law to detain Mr. Rodriguez.  By doing so, they violated Mr. Rodriguez's Constitutional rights.  Defendants'[1] motion should be denied.

Defendants' detention of Mr. Rodriguez was not justified by any federal authority. Defendants were not authorized to execute the Form I-247A detainer ("ICE form"); nor could Defendants have been authorized to execute an ICE administrative "warrant," as only authorized federal immigration officers—not Defendants—may detain the individual named for an alleged civil immigration violation.  And, unlike ordinary warrants, ICE forms are not based on probable cause of a crime or signed by a judge.  Nor was Defendants' detention authorized by any of the narrow provisions permitting state officers to enforce federal immigration law.  Defendants' characterization of this issue as "clear as mud" is incorrect—the law is ***crystal clear***, and Defendants cannot rely on qualified immunity to escape liability for violating Mr. Rodriguez's clearly established constitutional rights.  Nor does Washington law authorize state law enforcement officers to arrest individuals on the basis of probable cause of a federal civil immigration violation.  Because Defendants' detention of Mr. Rodriguez was not authorized, the Court should deny Defendants' motion.

## II.      IDENTITY AND INTEREST OF AMICUS CURIAE

American Civil Liberties Union of Washington ("ACLU-WA") is a statewide, nonpartisan, nonprofit organization of over 80,000 members and supporters dedicated to the preservation of civil liberties.  ACLU-WA works in courts, legislatures, and communities to preserve the individual rights and liberties guaranteed to all people by the Constitution and laws of the United States.  ACLU-WA frequently participates as a party and *amicus curiae* in cases

---

[1] Defendants Thomas, Gardner, Tiemann, and Stephenson have moved for partial summary judgment.  Dkt. 25.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

involving civil liberties and criminal justice issues, including unlawful detention and immigrants' rights.  In order to promote its organizational mission and the interests of its members, ACLU-WA engages in community education and has led local efforts to inform government officials and others about the issues implicated in this case.

### III.     BACKGROUND

ACLU-WA adopts the factual background set forth in Mr. Rodriguez's Opposition to Motion for Partial Summary Judgment.  *See generally* Opp. (Dkt. 42) at 2-7.

### IV.     ARGUMENT

**A.     Defendants' Actions Were Not Authorized by Federal Law.**

The Fourth Amendment protects all people, including noncitizens, from "unreasonable searches and seizures."  U.S. Const. amend. IV.  Here, Mr. Rodriguez was seized for Fourth Amendment purposes because Defendants prevented him from leaving the scene, placed him in handcuffs, and transported him in their patrol vehicle to the ICE field office.  *See Brendlin v. California*, 551 U.S. 249, 255 (2007) (seizure occurs when police actions "show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence"); *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 462, 465 (4th Cir. 2013).  But Defendants were not authorized to detain Mr. Rodriguez under federal law.

**1.     The ICE Form Did Not Authorize Defendants to Detain Mr. Rodriguez.**

**a.     ICE Forms Do Not Authorize State Officials to Effect a Criminal Arrest or Seizure Because the Forms Are Not Issued by a Neutral Magistrate and Do Not Show Probable Cause That the Individual Committed a Crime.**

The words at issue in this case—"warrant," "arrest warrant," "probable cause," "charging document"—have meaning.  They are terms of art that trigger particular responses from criminal justice system actors and corresponding constitutional protections.  When ICE improperly appropriates these terms in the immigration context, it engages in Doublespeak:  The words

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 2
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

continue to have power, but come with none of the associated protections.  The administrative "warrant" lodged against Mr. Rodriguez did not authorize arrest by local officials.

*First*, as a matter of federal law, ICE forms may be executed only by trained immigration agents.  8 C.F.R. § 287.5(e)(2) (providing "authority to execute warrants" only to "immigration officials who have been authorized or delegated such authority").  Indeed, only a limited set of trained "immigration officers" may issue and execute such "warrants."  *See* 8 U.S.C. §§ 1226, 1357; 8 C.F.R. § 287.5(e)(3) ("immigration officers" must "successfully complete[] basic immigration law enforcement training" in order to execute warrants); *Arizona v. United States*, 567 U.S. 387, 408 (2012) (emphasizing that I-200s "are executed by federal officers who have received training in the enforcement of immigration law").  It is clear even from the face of these ICE forms that only such agents may execute them.  *See Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1255 (E.D. Wash. 2017) (only "'an[] immigration officer' authorized by [the INA]" may execute ICE administrative warrant), *appeal dismissed as moot*, 716 F. App'x 741 (9th Cir. 2018).

The only circumstance in which a local officer is permitted to execute an ICE form is when he has been authorized to perform that immigration function pursuant to a "written agreement" under 8 U.S.C. § 1357(g) (also known as a "287(g) agreement"); *see id.* § 1357(g)(1)-(5) (listing training and other requirements for officer to perform immigration-officer functions).  Indeed, that is routinely a specifically delegated authority in such agreements, underscoring that local officials may not do so absent an agreement.  *See* U.S. Immigration & Customs Enforcement, Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act (last updated Aug. 10, 2018), https://www.ice.gov/287g (collecting current agreements).  There is no such agreement here.  *Id*.

*Second*, while local law enforcement officers may ordinarily execute criminal arrest warrants signed by judges, ICE forms are not signed by a judge or based on probable cause that a crime was committed.  *See Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971).  The "probable cause" mentioned on the ICE form relates to a suspected ***civil*** violation of immigration

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 3
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

law, not criminal.  *See Arizona*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States."); *see also* Gardner Decl. (Dkt. 38) Ex. B (Form I-247A containing check boxes indicating immigration officer only has probable cause to believe individual is removable, not whether a crime has been committed).  And no court participated in issuing or reviewing the Form I-247A detainer.  *See, e.g.*, 8 C.F.R. § 287.7 (listing DHS officers who can issue I-247s).

Numerous courts have come to the same conclusion:  No matter what ICE forms are called, local law enforcement officers cannot constitutionally rely on them to provide the basis for arrest.  *See, e.g.*, *Roy v. County of Los Angeles*, 2018 WL 914773, at *23 (C.D. Cal. Feb. 7, 2018) ("*Roy I*"), *reconsideration denied*, *Roy v. County of Los Angeles*, 2018 WL 3439168 (C.D. Cal. July 11, 2018) ("*Roy II*"); *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959, 975 (S.D. Ind. 2017); *Ochoa*, 266 F. Supp. 3d, at 1255-56; *Lunn v. Commonwealth*, 477 Mass. 517, 527-28, 537 (2017); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1008-09 (N.D. Ill. 2016); *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305, at *8 (D. Or. Apr. 11, 2014); *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014).  As one court recently explained, relying on an ICE form for authority to arrest would be "similar to allowing a county child support enforcement worker to issue detainers or warrants … [for] contempt of court of nonpayment of child support."  *Esparza v. Nobles County*, No. 53-CV-18-751, slip op. at 15 (Minn. Dist. Ct. Oct. 19, 2018) (*see* Appendix A).

Indeed, numerous law enforcement agencies in Washington have enacted policies and issued guidance prohibiting officers from relying on ICE forms as the basis for arrest due to the unconstitutionality of this behavior.  For instance, Washington State's county sheriffs have explained that ICE "'detainers' are nothing more than a request to keep someone in custody beyond their release date ***without any judicial authority***."  Statement of Washington State Sheriffs' Ass'n at 1 (Mar. 31, 2017) (emphasis added), https://bit.ly/2OY4NV1.

The Washington State Attorney General provided guidance explaining that "[g]overnment entities that receive detainer requests are not relieved of their obligation to

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 4
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

comply with the Fourth Amendment to the U.S. Constitution and article I, § 7 of the Washington Constitution" and reminding that "[a]bsent a judicial warrant, a government entity may only hold an individual in custody if the officer has probable cause to believe that the person has committed a crime." Washington State Office of the Attorney General, Guidance Concerning Immigration Enforcement at 26 (April 2017), https://bit.ly/2zgWglg ("Washington Attorney General Guidance"). By December 11, 2017, *the City of Tukwila itself* had also recognized that Tukwila police officers were not authorized to detain individuals solely based on civil immigration status. *See* Compl. (Dkt. 1) ¶ 70.

Despite the weight of this authority and widespread recognition of the unconstitutionality of detention based on ICE forms generally—and Form I-247A detainers specifically—by the local law enforcement community, Defendants wrongly treated Mr. Rodriguez's ICE "warrant" as equivalent to a criminal warrant by using it to justify their detention. But ICE forms are constitutionally defective because they are not issued by neutral magistrates, and they cannot show probable cause of a crime.

For similar reasons, the "collective knowledge" doctrine cannot authorize this arrest. *See* Mot. (Dkt. 25) at 11. Under this doctrine, courts "look to the collective knowledge of all the officers involved in the criminal investigation" when determining whether an arrest complied with the Fourth Amendment. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (citation & internal quotation marks omitted).

### b. Defendants Could Not Rely on ICE Forms to Detain Mr. Rodriguez.

Defendants rely on the existence of ICE forms to justify their detention of Mr. Rodriguez. But even on their face, ICE forms do not authorize Defendants' detention. Defendants cannot rely on an "administrative warrant" or "ICE fugitive warrant" to justify the detention. *See* Dkt. 25 at 4, 6. Defendants have not pointed to any document for this "warrant" other than the Form I-247A detainer. *Id.* As explained above, Form I-247A cannot justify their detention of Mr. Rodriguez. And the other forms which ICE styles as "warrants" do not direct local jurisdictions

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 5
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

to arrest or detain the individuals named in the form.  *See, e.g.*, *Ochoa*, 266 F. Supp. 3d at 1243-44 (describing Form I-200 administrative "warrant" which is "directed to '[a]ny immigration officer' authorized by the Immigration and Nationality Act (INA)"—not local law enforcement—and "commands any authorized immigration officer to arrest and take [the named individual] into custody for removal proceedings").

As the Supreme Court has explained, federal law prohibits state officers from making the "unilateral decision" to arrest a noncitizen absent a request from federal authorities, and restricts even those federal requests to "limited circumstances in which state officers"—after written certification and adequate training—"may perform the functions of an immigration officer." *Arizona*, 567 U.S. at 408-10.  Such arrests are preempted because they "would disrupt the federal framework to put state officers in the position of holding aliens in custody for possible unlawful presence without federal direction and supervision." *Id.* at 412-13; *see also Santos*, 725 F.3d at 465; *infra* Part IV.A.2.a.  Defendants' unilateral decision to initially detain Mr. Rodriguez based on a notice in the National Crime Information Center ("NCIC") database, and where that notice was based on a Form I-247A detainer that was not in effect because it was not served on Mr. Rodriguez, violated clearly established federal law.

### 2. No Valid Federal Statutory Authority Allowed Defendants to Detain Mr. Rodriguez.

#### a. Generally Only Federal Law Enforcement Officers Are Authorized to Arrest and Detain Individuals Who Are Suspect of Civil Immigration Violations.

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394.  But local police officers lack authority to arrest or detain individuals suspected of civil immigration violations.  This is because "the removal process is entrusted to the discretion of the Federal Government." *Id.* at 409.  The federal statutory structure in place for immigration enforcement vests authority to arrest for civil offenses exclusively with federal agents and local officers deputized under a 287(g) agreement. *Id.*  To minimize erroneous actions and ensure the integrity of the removal

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 6
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

process, Congress has required that important decisions be made only by these specially trained officers.  *See* 8 U.S.C. §§ 1357(a), (g)(2); 8 C.F.R. §§ 287.1(g), 287.5(c)-(e).  This system ensures that immigration enforcement remains the prerogative and responsibility of "one national sovereign, not the 50 separate States."  *Arizona*, 567 U.S. at 395.

The Immigration and Nationality Act ("INA") ***forbids*** local officers, absent a formal agreement, from performing "a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers)."  8 U.S.C. § 1357(g)(1).  Those functions include, as already explained, executing ICE "warrants," as well as effecting warrantless arrests, *see id.* § 1357(a)(2).  Except for narrow exceptions noted below, a local officer may perform such functions ***only*** pursuant to a 287(g) agreement.  Neither the narrow exceptions nor a 287(g) agreement apply in this case.

> **b.    Defendants' Detention Did Not Satisfy Any of the Limited Statutory Exceptions that Authorize State Law Enforcement Officers to Arrest and Detain Individuals Based on Civil Immigration Violations.**

In the few places where Congress has chosen to allow states and localities to perform immigration functions without a formal agreement, it has explicitly granted that power in narrowly drawn statutory grants authorizing discrete actions.  *See Arizona*, 567 U.S. at 408-10; *e.g.*, 8 U.S.C. § 1103(a)(10) (permitting, with the Attorney General's authorization, local officers to perform immigration functions where there is an "actual or imminent mass influx of aliens" presenting "urgent circumstances").  None of these narrow exceptions apply here.

Federal immigration duties may also be delegated to local law enforcement under a 287(g) program, which is a voluntary partnership that deputizes local law enforcement to carry out ICE duties.  *See* 8 U.S.C. § 1357(g).  While these agreements may grant local police immigration enforcement authority, no such authority exists here because neither the City of Tukwila nor any other jurisdiction in Washington has entered into a 287(g) program.  *See*

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 7
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act, https://www.ice.gov/287g.

### c.    Defendants' Detention Did Not Qualify As Cooperation Under § 1357(g)(10)(B).

Defendants also cannot rely on 8 U.S.C. § 1357(g)(10)(B).  This section provides that nothing in subsection (g)—the provision requiring written agreements for states and localities to perform immigration functions—"shall be construed to require an agreement" for an officer "to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."  *Id.*  But the cooperation proviso cannot be read to permit local officials to perform the functions of an immigration officer, like arrest.  Doing so would effectively read out of the statute the emphasis Congress put on training.  *See Arizona*, 567 U.S. at 409 ("arrest power [is] contingent on training").

The narrowness of § 1357(g)(10)(B) is underscored by *Arizona*; its examples of "cooperation" included only highly circumscribed support activities, such as "responding to requests for information," or "provid[ing] operational support."  *Arizona*, 567 U.S. at 410.  Similarly, DHS's "cooperation" guidance does not mention arrests, even pursuant to federal requests, as examples of cooperation under § 1357(g)(10)(B).  *See* U.S. Department of Homeland Security, Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters at 13-14, https://bit.ly/2AtytR4.

Defendants cannot cite dicta from *Arizona* to change these rules.  *See* Dkt. 25 at 11 (referring to *Arizona* court's statement that "there may be some ambiguity as to what constitutes cooperation under the federal law").  "Only when acting under color of federal authority, that is, *as directed, supervised, trained, certified, and authorized* by the federal government, may state officers effect constitutionally reasonable seizures for civil immigration violations."  *Lopez-Aguilar*, 296 F. Supp. 3d at 977 (emphasis added).  Defendants can find no such authority here.

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 8
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**B.     Defendants' Detention Was Not Authorized Under Washington State Law.**

**1.     Washington Law Did Not Authorize Defendants to Detain Mr. Rodriguez.**

The Washington Constitution prohibits prolonged detention for mere questioning related to immigration status.  "Article 1, § 7 of the Washington State Constitution forbids local enforcement officers from prolonging a detention to investigate or engage in questioning about an individual's immigration status, citizenship status and/or national origin."  *Ramirez-Rangel v. Kitsap County*, No. 12-2-09594-4, slip op. at 4 (Wash. Sup. Ct., Aug. 16, 2013) (*see* Appendix A). Just as Washington officers are constitutionally prohibited from extending an otherwise lawful detention to interrogate the detainee about his or her immigration status, neither can they detain someone in custody based solely on a suspected civil immigration violation.  *See State v. Chenoweth*, 160 Wn.2d 454, 472-73 (2007) ("In instances where a warrant is facially insufficient … a constitutional violation clearly exists because of the demonstrable absence of 'authority of law' to justify the search or arrest.").

No authority exists under Washington law for Defendants to detain someone on a federal civil immigration warrant.  On this point, Defendants misplace reliance on *City of El Cenizo*.  *See* Dkt. 25 at 10-11.  Whether "[i]t is undisputed that ***federal*** immigration officers may seize aliens based on an administrative warrant" is beside the point.  *Id*. at 10 (quoting *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018)) (emphasis added).  Defendants are local law enforcement officers, not federal, and the Texas law at issue in that case specifically authorized state officers to carry out federal detention requests.  *See City of El Cenizo*, 890 F.3d at 188.  The question is whether Defendants were authorized under ***Washington*** law—not Texas law—to detain Mr. Rodriguez based on a civil immigration violation.  *Cf. Roy II*, 2018 WL 3439168, at *3 ("the local law enforcement in this case does not have the authority to arrest individuals for civil immigration violations, which is in line with Supreme Court precedent"); *Lunn*, 477 Mass. at 532 (noting that no Massachusetts statute "either directly or indirectly authorizes the detention of individuals based solely on a Federal civil immigration detainer"); *Esparza*, slip op. at 15-18 ("[t]here does not exist within Minnesota Statute the power for

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 9
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Minnesota peace officers to arrest a person for a federal civil offense at the request of ICE officers").  Under Washington law, the answer is no.  RCW 10.31.100 provides the narrow circumstances in which a police officer can make a warrantless arrest.  *Id.*  But there is no suggestion that the county had probable cause of any crime.

### 2. Defendants Lacked the Required Probable Cause of a Felony to Justify a Warrantless Arrest.

Defendants' unconstitutional detention of Mr. Rodriguez cannot be cured by their tentative, after-the-fact speculation that Mr. Rodriguez "may" or "might" have committed a crime.  Dkt. 25 at 12.  "Mays" and "mights" are not "probable cause" as Washington law requires to justify a warrantless arrest.  RCW 10.31.100; *State v. Scott*, 93 Wn.2d 7, 10 (1980).  Even Defendants' own cited authority requires "reasonable suspicion to believe" a suspect has committed an immigration crime.  *See* Dkt. 25 at 13 (quoting *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 973 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990, 1001 (9th Cir. 2012)).  "Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty."  *Scott*, 93 Wn.2d at 10-11 (citation & internal quotation marks omitted).  The circumstances Defendants describe do not give rise to reasonable suspicion of a criminal—rather than civil—immigration violation.  "[T]he Supreme Court has long characterized deportation as a civil proceeding."  *Santos*, 725 F.3d at 467 (citing *Padilla v. Kentucky*, 559 U.S. 356, 365-66 (2010) and *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 155 (1923)).  The information Defendants received from the NCIC database specifically described Mr. Rodriguez as having an outstanding "***ADMINISTRATIVE*** WARRANT"—not a criminal one.  Dkt. 25 at 4 (emphasis added).  NCIC database information, moreover, does not provide probable cause for an arrest.  Because ICE populates the NCIC database with civil immigration information, and because unlawful status itself is not a crime, an entry in the NCIC database does not provide probable cause for detention.  Washington Attorney General Guidance at 19-20.

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 10
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Defendants requested and received a Form I-247A detainer—a civil ICE form—not a criminal warrant from ICE. *Id*. at 6. Nor did the information leading to Defendants' initial detention of Mr. Rodriguez—before the request from ICE and before they received Form I-247A—include any suggestion of criminality. *See Santos*, 725 F.3d at 466 ("[T]he reasonableness of an official invasion of a citizen's privacy must be appraised on the basis of the facts as they existed at the time that invasion occurred."). Indeed, Defendants have not argued they had any real belief that Mr. Rodriguez committed a criminal immigration violation, or even that they had any real belief that ICE was interested in Mr. Rodriguez for criminal, rather than civil, reasons.

Defendants' reliance on 8 U.S.C. § 1253(a) also fails. Section 1253(a) is an "unusual criminal offense" which requires much more than a final order more than ninety days old to establish guilt. *United States v. Miszczuk*, 847 F. Supp. 2d 227, 229 (D. Mass. 2012). Among other things, this crime of "willful failure to depart" requires at least that—willfulness. 8 U.S.C. § 1253(a)(1)(A). The Supreme Court has long held willfulness requires, at minimum, proof of a country willing to receive the suspect—that is, some indication that the suspect has the ability to comply with the requirement to depart. *See Heikkinen v. United States*, 355 U.S. 273, 276 (1958); *see also United States v. Xiang Wang*, 2014 WL 6472857, at *3-4 (D. Kan. Nov. 18, 2014) (discussing and applying *Heikkinen*).

Further, "willful failure to depart" also requires "a final order of removal [that] is outstanding by reason of being a member of any of the classes described in section 1227(a)." 8 U.S.C. § 1253(a)(1). But despite apparently having access to the predicate removal order supporting the alleged crime, *see* Dkt. 25 at 7, Defendants cannot articulate why they reasonably suspected Mr. Rodriguez was a member of a statutorily required class. *See id*. at 12 n.4. Even if Mr. Rodriguez were a class member and knew which class formed the basis of the order, Defendants cannot base ***their*** belief on ***Mr. Rodriguez's*** knowledge. *See Santos*, 725 F.3d at 467 ("[L]aw enforcement officers, ***not detainees***, are responsible for identifying evidence justifying a seizure.") (emphasis added). And the underlying removal order must be valid—something that

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 11
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

would be impossible to ascertain from the Form I-247A on which Defendants rely in this case—an issue of particular concern where, as here, Mr. Rodriguez was ordered removed *in absentia* and the order of removal has not been judicially reviewed.  "In cases where the order of removal did not receive judicial review, Congress appropriately provided that a defendant charged with violating section 1253(a)(1) may file a motion to dismiss in the federal district court before trial, so that a federal judge may review the validity of the order of removal."  *Miszczuk*, 847 F. Supp. 2d at 229.  A defendant can successfully mount a collateral attack against this charge by challenging the validity of the removal order.  *See United States v. Yan Naing*, 820 F.3d 1006, 1009 (8th Cir. 2016).  Defendants did not have reasonable suspicion that Mr. Rodriguez violated criminal immigration law and cannot use this crime to justify their unauthorized detention.

Neither does the County's detention satisfy any other aspect of Washington's warrantless arrest statute.  This does not qualify as a valid civil detention, such as one relating to mental health involuntary commitment.  *See, e.g.*, RCW 71.05.230.  No Washington statute permits seizure in these circumstances and no authority exists under Washington law for the County to detain someone on a federal civil immigration warrant.  *See also Santos*, 725 F.3d at 465.  Defendant's arrest and detention of Mr. Rodriguez was unreasonable and violated his rights under the Washington State Constitution and Washington statutes.

## V.   CONCLUSION

For all of the reasons stated above, ACLU-WA respectfully requests this Court deny Defendants' partial motion for summary judgment.

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 12
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 29th day of October, 2018.

DAVIS WRIGHT TREMAINE LLP
Cooperating Attorneys for ACLU-WA


By *s/Jennifer K. Chung*
    Kenneth E. Payson, WSBA # 26369
    Jennifer K. Chung, WSBA # 51583
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Tel: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: kenpayson@dwt.com
           jenniferchung@dwt.com


ACLU-WA FOUNDATION

    Eunice Cho, WSBA # 53711
    901 Fifth Avenue, Suite 630
    Seattle, WA 98164
    Tel:  (206) 624-2184
    Fax:  (206) 624-2190
    E-mail:  echo@aclu-wa.org


*Attorneys for Proposed Amicus Curiae*
*American Civil Liberties Union of*
*Washington*

AMICUS CURIAE BRIEF OF ACLU-WA
(No. C18-421 RAJ) — 13
4812-5362-1369v.10 0050033-001660

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# APPENDIX A

STATE OF MINNESOTA                                  IN DISTRICT COURT

COUNTY OF NOBLES                               FIFTH JUDICIAL DISTRICT
                                                         FILE #53-CV-18-751

Rodrigo Esparza, Maria de Jesus de Pineda,
Timoteo Martin Morales,
And Oscar Basavez Conseco,
                          Plaintiffs,


-vs-                                                              **ORDER**


Nobles County; Nobles County Sheriff
Kent Wilkening, in his individual and
Official capacity,
                          Defendants.

---

     The above-entitled matter came before the Honorable Gregory J. Anderson, Judge of District Court, on September 21, 2018 for temporary restraining order hearing.  Attorneys Ian Bratlie, Norman Pentelovitch and Teresa Nelson appeared on behalf of the Plaintiffs.  Attorney Stephanie Angolkar appeared with an on behalf of the defendants.

     Based on the testimony, exhibits, file and records herein, the Court makes the following:

### **ORDER**

1. The Plaintiffs' Motion for Temporary Restraining Order and Injunction is GRANTED;

2. $0 bond is required; and

3. The attached memorandum is incorporated herein.


                                   _____

                                   Gregory Anderson
                                   Judge of District Court

**********************************************************************

### MEMORANDUM

*Rodrigo Esparza, Maria de Jesus de Pineda,*
*Timoteo Marin Morales, and Oscar Basavez Conseco,*
*-vs-*
*Nobles County; Nobles County Sheriff*
**Court File No.: 53-CV-18-751**

### INTRODUCTION

Plaintiffs seek a temporary injunction and restraining order against Defendant Nobles County Sheriff's Office (NCSO) and Sheriff Wilkening. Plaintiffs claim that Sheriff Wilkening improperly continued detention of Plaintiffs after they should have been released from Nobles County jail at the expiration of their sentence, dismissal of charges, or posting of bail or bond. The continued detention was based on holds placed on them pursuant to Immigration and Customs Enforcement (ICE) documents promulgated under ICE procedures.  For the reasons set out below, the Court grants the relief sought by Plaintiffs in part and denies in part.

### FACTS

For purposes of this decision the following recitation of facts constitutes the Court's findings of fact:

Plaintiffs are all persons who were incarcerated in the Nobles County jail who later were detained pursuant to the request of ICE.  ICE requested that they be held based on pending possible deportation action by ICE.  The status of the individuals as to immigration status and reasons held in state custody differ and are summarized below:

- **Plaintiff Rodrigo Esparza**

Plaintiff Rodrigo Esparza is a lawful permanent resident of the United States, and is the holder of what is commonly referred to as a "green card." On April 5, 2018, he was arrested for receiving stolen property.   Bond was set at

$10,000 and an immigration hold was placed on him.  There is a disputed issue of fact regarding jail staff dissuading his family from posting bail on his behalf.  On April 9, 2018, ICE sent Forms I-247 and I-200 to the NSCO while Esparza was in custody.   On or about August 3, 2018 Esparza plead guilty to a gross misdemeanor and was sentenced to time served.  He was released from custody for his state charge but remained in custody ("rolled over") on the ICE hold.

- **Maria de Jesus de Pineda**

Plaintiff de Pineda was arrested for identity theft on February 13, 2018. Her bail was set at $10,000.  Her family posted the bond on February 17, 2018. NCSO held her because she had an ICE hold. On February 17, 2018, the immigration documents I-247 and I-200 were sent to NCSO and served on Ms. Pineda.  Ms. Pineda has at least one alias; for purposed of this decision the Court finds "Brenda Cerda" and Ms. Pineda are the same person based on affidavit of Ms. Berkevich.  Pineda was taken into ICE custody on February 20, 2018 and missed her next Nobles County court appearance.  She was released from ICE custody upon posting a $6,000 immigration bond but taken back into state custody pursuant to the bench warrant.   She was released from state custody on March 9, 2018.

- **Timoteo Martin Morales**

Mr. Martin Morales has lived in Worthington, MN for about two years. He was arrested and charged with two counts of criminal sexual conduct.  On March 26, 2018 he attempted to post bond but the bondsman was informed there was an ICE hold and he would not be released.  On July 24, 2018 the criminal charges were dismissed.  He remained in custody and on July 25, 2018 he was served with forms I-247 and I-200.  His state case was refiled on July 26, 2018.

- **Oscar Basavez Conseco**

Plaintiff Basavez Conseco was arrested for drug charges.  He was not required to post bail or bond due to the low level of his offenses; however, he would not be released due to the ICE hold.  He therefore asked his attorney to request a modest bail amount.

- **Defendants Nobles County and Kent Wilkening**

Nobles County is a political subdivision of the State of Minnesota that operates and is responsible for the Nobles County jail.  Defendant Kent Wilkening is the Sheriff of Nobles County.  Monette Berkevich is the jail administrator.

***Background of Relevant ICE Policies and Procedures:***

Immigration and Customs Enforcement (ICE) is an agency of the Department of Homeland Security (DHS).  It is responsible for enforcement of immigration laws.

Local political entities, such as Nobles County, may voluntarily cooperate with ICE and assist in the enforcement of immigration laws in three ways:

First, DHS may enter into cooperative agreements with states and localities ("287(g) agreements"), under which state and local officers may, under the supervision of the Secretary of Homeland Security, perform the functions of an immigration officer. Nobles County has no such agreement.

Second, DHS may enter into intergovernmental services agreements ("IGSA") with local political entities, including Nobles County, to provide housing and other needs attendant to the care and custody of persons incarcerated while in the legal custody of ICE.  Nobles County has such an agreement.  A detainee cannot be held under an IGSA until an immigration officer arrests the detainee.  When someone finishes their jail sentence, posts bond or bail, or is otherwise entitled to release on State criminal charges, but has an ICE hold, that person is "rolled over" to ICE custody, although they may

remain at Nobles County jail.  Although an argument can be made that "rolling over" a detainee is not the same as an arrest by an immigration officer, the Court believes the "arrest" takes place through the use of forms and policy. Therefore, the IGSA agreement that Nobles County has with ICE (or any other entity contracting for incarceration services) is not affected by this Order assuming, of course, the initial arrest and "rolling over" of the subject is permissible under applicable law.

Third, states and localities may "communicate with the Secretary of Homeland Security regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" pursuant to 8 U.S.C. § 357(g)(10).  This statute provides:

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State--
>
> (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or
>
> (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

The cooperation must be pursuant to a "request, approval, or other instruction from the Federal Government." *Arizona v. United States*, 567 U.S. 387, 410 (2012).

This communication and cooperation between NCSO and ICE regarding identification and detention of persons who may face immigration action is largely accomplished through the use of forms transmitted to NCSO from ICE. The relevant content and use of the forms is summarized below:

- **Form I-247A**

Form I-247A is the Department of Homeland Security Immigration Detainer-Notice of Action.  It notifies NCSO that the subject of the detainer is a removal alien, based on:

    (1) A final order of removal against the alien;
    (2) The pendency of ongoing removal proceedings against the alien;
    (3) Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or In addition to other reliable Information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or
    (4) Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks Immigration status or notwithstanding such status is removable under U.S. Immigration law.

Based on the information provided, NCSO is then requested and instructed to:

    (1) Notify DHS as early as practicable (at least 48 hours, if possible) before the alien is released from your custody, with phone numbers provided;
    (2) Maintain custody of the alien for a period NOT TO EXCEED 48 HOURS beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien must be served with a copy of this form for the detainer to take effect. This detainer arises from DHS authorities and should not impact decisions about the alien's ball, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.
    (3) Relay this detainer to any other law enforcement agency to which you transfer custody of the alien.
    (4) Notify this office in the event of the alien's death, hospitalization or transfer to another Institution.

(emphasis in original). The form is signed by an immigration officer.  There is a portion at the bottom of the first page for the local correctional officer or other person to complete information from the local authority and show proof of service on the subject.

- **Form I-200**

Form I-200, the United Sates Department of Homeland Security Warrant for Arrest of Alien, is a check box form which indicates why a subject may be subject to removal.  It provides in relevant part:

> To:  Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations
>
> I have determined that there is probable cause to believe that [name of subject] is removable from the United States.  This determination is based upon:
>
> ☐  the execution of a charging document to initiate removal proceedings against the subject;
> ☐ the pendency of ongoing removal proceedings against the subject;
> ☐  the failure to establish admissibility subsequent to deferred inspection;
> ☐  biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or
> ☐  statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.
>
> YOU ARE COMMANDED to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien.

(emphasis in original). The form provides a signature block for the "Authorized Immigration Officer" as well as a certificate of service for the local jail authority.

- **Form I-203**

Form I-203 is an Order to detain or release alien.  It provides a directive to the Nobles County Jail, C/O sheriff, to either detain or release a named

alien.  It provides no information other than the name, date of birth, and nationality of the alien.

### *ICE Detainers in Nobles County*

In 2017 a lawsuit involving a person held in the Nobles County jail on the basis of an immigration detainer resulted in the Federal District Court decision  *Orellana v. Nobles County*, 230 F. Supp 3d 934 (D. Minn. 2017). Subsequently, the parties entered into an agreement and a modest financial settlement.  The agreement provided that Nobles County would amend its procedure on ICE holds. This cooperation is reflected in Policy 502 (Inmate Reception), which provides in relevant part:

> 502.3.2 IMMIGRATION DETAINERS
> No individual should be held based on a federal immigration detainer under 80CFR287.7 unless the person has been charged with a federal crime or the detainer is accompanied by a warrant, affidavit of probable cause, or removal order.  Any administratively signed warrant must be supported by sufficient probable cause of both the aliens suspected removability as well as his/her likelihood to flee. Notification to the federal authority issuing the detainer should be made prior to release.

> 502.3.3 IMMIGRATION NOTIFICATION ON COMMITMENT
> Staff shall inquire into the nationality of all persons committed to this facility who were convicted of a felony or found to be mentally ill. If it reasonably appears the person is an alien. Staff shall notify the US Immigration and Customs Enforcement (ICE) of the following, if known (Minn. Stat § 631.50):
> (a) The date of and the reason for the commitment
> (b) The length of time for which the inmate is committed
> (c) The country of which the inmate is a citizen
> (d) The date on, and the port at, which the inmate last entered the United States.

The issue in the case before this court is whether the present detention of persons facing immigration action is permissible under Minnesota law.  As noted at the hearing, the crux of the matter is if the detainers promulgated

under forms I-247A and I-200 may be used to justify continued detention of a subject of immigration removal proceedings.

## ANALYSIS

Temporary injunctive relief is an extraordinary equitable remedy that is within a district court's broad discretion. *Metropolitan Sports Facilities Commission v. Minnesota Twins Partnership, et al.,* 638 N.W.2d 214, 220 (Minn. Ct. App. 2002), *rev. denied* Feb. 4, 2002, *citing Eakman v. Brutger*, 285 N.W.2d 95, 97 (Minn. 1979).   In evaluating whether to grant a temporary restraining order, the Court must consider the five factors set out in *Dahlberg Bros. v. Ford Motor Co.,* 137 N.W.2d 314, 321-22 (Minn. 1965):

(1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.
(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.
(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.
(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.
(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

Though each factor is considered by the Court, "the primary factor in determining whether to issue a temporary injunction is the proponent's probability of success in the underlying action." *Minneapolis Federation of Teachers, AFL-CIO, Local 59 v. Minneapolis Public Schools, Special School Dist. No. 1*, 512 N.W.2d 107, 110 (Minn. Ct. App. 1994), *rev. denied* March 31, 1994.

1. ***Dahlberg* Factor #1: The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.**

The background and history of the parties in this case was described in the above factual recitation. The Court notes that there is an obvious power disparity between the plaintiffs and the defendants. The Defendants have arrested and detained the Plaintiffs for both alleged State crime and Federal ICE civil holds.

2. ***Dahlberg* Factor #2: Harm suffered by Plaintiffs if the temporary restraint is denied compared to the harm inflicted on Defendant if the injunction issues pending trial.**

Plaintiffs, and those similarly situated, suffer harm as their right against unreasonable seizure guaranteed by the Fourth Amendment to the United States Constitution and Article I, section 10 of the Minnesota State Constitution may be violated by the present practice of relying on ICE detainers to continue incarceration. There is little if any harm to Defendants if the practice is temporarily halted.

3. ***Dahlberg* Factor #3: The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.**

The likelihood of success on the merits is the most important consideration and requires the most analysis which is set out below. As noted at the hearing, the crux of the matter is whether the ICE forms are warrants or detainers which may justify the continued detention of jail inmates after they have served their sentence, secured release through bail or a release order, or had their charges dismissed. It appears that, based on the following analysis, there is a substantial likelihood that Plaintiffs will prevail on the merits.

Analysis of the present NCSO procedure begins with *Arizona v. United States,* 567 U.S. 387 (2012). In that case the State of Arizona created laws criminalizing the mere presence of undocumented persons in Arizona, as well

as other laws regarding undocumented status.  The United States Supreme Court struck down portions of the law and set out the limits of State involvement in assisting the United States in the enforcement of immigration laws.

The United States Supreme Court first affirmed the role of the Federal Government in immigration law enforcement noting the United States has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States,* 587 U.S. 387 (2012).  Removal is a civil, not criminal, matter.  *Id.* at 392.  "As a general rule, it is not a crime for a removable alien to remain present in the United States.  If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent."  *Id.* at 407 (internal citations omitted).  "Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances."  *Id.* at 409.

Arrest by state officials for possible removal alone is not permissible except under the narrow circumstances permitted under a 287(g) agreement which, as noted above, is not at issue in this case.  There are also provisions under 8 U.S.C. § 1357 (g) which allow for a written agreement between the Attorney General and local political subdivisions; however, there is no written agreement between NCSO and the Attorney General to provide such services.

In *Lunn v. Commonwealth of Massachusetts*, 78 N.E.3d 1143 (Mass. 2017), the Massachusetts Supreme Court considered the detention process in a case similar to the present case.  The subject in that case was held after state criminal charges were dismissed.  The Massachusetts Supreme Court determined that the use of Form I-247D[1] did not justify continued detention after criminal charges were dismissed.  The Court noted it was not a criminal

---

[1] The *Lunn* decision discusses in detail Form I-247D, indicating it is now I-247A. *Lunn* 78 N.E. at 1152.  Form I-247A is the form used in this case.  It appears the forms are virtually identical in content, and in any event have no difference as it relates to their use to justify detention based on the forms.

detainer and it did not allege that the subject was sought in connection with a federal criminal offense.  *Id.* at 1151.

The *Lunn* Court considered the argument of the United States that Section 1357(g)(10) confers authority to local political subdivisions to assist in the manner described in Lunn and argued as appropriate in this case.  The Court noted:

> Section 1357(g) generally concerns situations in which State and local officers can perform functions of a Federal immigration officer. Section 1357(g)(1) provides specifically that States and their political subdivisions may enter into written agreements with the Federal government that allow State or local officers to perform functions of an immigration officer "at the expense of the State or political subdivision and to the extent consistent with State and local law." Such agreements are commonly referred to as "287(g) agreements," referring to the section of the act that authorizes them, § 287(g), which is codified in 8 U.S.C. § 1357(g). Among other things, State and local officers performing Federal functions under such agreements must be trained in the enforcement of Federal immigration laws, must adhere to the Federal laws, may use Federal property and facilities to carry out their functions, and are subject to the supervision and direction of the United States Attorney General. 8 U.S.C. § 1357(g)(2)-(5). No State or political subdivision is required to enter into such an agreement. *See* 8 U.S.C. § 1357(g)(9).

> The specific language relied on by the United States in this case is the final paragraph of § 1357(g), which provides:

>> (10) Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State … (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

> Significantly, the United States does not contend that § 1357(g)(10) affirmatively confers authority on State and local officers to make

arrests pursuant to civil immigration detainers, where none otherwise exists. *See Craan,* 13 N.W.3d 569 (recognizing that Federal statute may confer authority on State officers to arrest for Federal offenses). *See also Di Re,* 332 U.S. at 589-90. In other words, it does not claim that § 1357(g)(10) is an independent source of authority for State or local officers to make such an arrest. Rather, it cites § 1357(g)(10) as a part of its argument that State and local officers have inherent authority to make these kinds of arrests; specifically, it relies on this provision for the proposition that such arrests, when performed at the request of the Federal government, are a permissible form of State participation in the Federal immigration arena that would not be preempted by Federal law. We have already rejected the argument that Massachusetts officers have an inherent authority to arrest that exceeds what is conferred on them by our common law and statutes.

*Lunn,* 78 N.E.3d at 534-35.

Although the *Lunn* case involves arguments directly by the United States and the application of Massachusetts law, the same principles apply to this case. NCSO argues that there is authority for it to continued detention through its voluntary cooperation with ICE to communicate and cooperate with ICE in the enforcement of immigration law. For the reasons cited in *Lunn* and as set out below as applied to Minnesota law, it appears Plaintiffs are likely to prevail on the merits.

The requirements for a valid arrest are defined by the Minnesota Constitution, statues, and case law. The Minnesota Constitution states:

Sec. 10. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

This is virtually identical to the Fourth Amendment of the United States Constitution:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the
place to be searched, and the persons or things to be seized.

An "arrest" is a taking, seizing, or detaining person of another, touching or
putting hands upon him in execution of process, or any act indicating intent to
arrest. *Rhodes v. Walsh*, 57 N.W. 212, 215 (Minn. 1983). The continued
detention of a person after release from State custody or expiration of sentence
is an arrest. Detention pursuant to ICE detainer is an arrest under the Fourth
Amendment that must be supported by probable cause. *Morales v.
Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) (Cited in *Orellana*, supra.)

The power of officers to arrest is defined by statute. Minn. Stat. § 629.30
states:

> Subdivision 1. **Definition.** Arrest means taking a person into
> custody that the person may be held to answer for a public offense.
> "Arrest" includes actually restraining a person or taking into custody
> a person who submits.

> Subd. 2. **Who may arrest.** An arrest may be made:

> (1) by a peace officer under a warrant;

> (2) by a peace officer without a warrant;

> (3) by an officer in the United States Customs and Border Protection
> or the United States Citizenship and Immigration Services
> without a warrant;

> (4) by a private person.

> A private person shall aid a peace officer in executing a warrant
> when requested to do so by the officer.

A valid warrant would need to be issued after oath or affirmation of facts
submitted to a judicial officer who is "neutral and detached" from law
enforcement. Fourth Amendment protection "consists in requiring that those
inferences be drawn by a neutral and detached magistrate instead of being
judged by the officer engaged in the often competitive enterprise of ferreting out
crime." *Johnson v. United States,* 333 U.S. 10, 14 (1948). A "warrant"

determining probable cause from a "government enforcement agent" does not comply with Fourth Amendment requirements without review by a magistrate. *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971).

The I-247 and I-200 detainers are not signed by a judge or magistrate. They are filled out and signed by an immigration official.  There is no oath or affirmation.  There is no showing of probable cause that a crime has been committed which resulted in the issuance of the warrant.  Rather, they are requests to detain someone who faces a civil action for removal.  It merely informs the local cooperating political subdivision that an immigration official has determined there is "probable cause" that the subject faces a civil proceeding for removal.  The NCSO, or any other entity, is not justified in relying on them to detain a person in custody beyond the time they are required to serve after sentence or when they post bail or bond, or are otherwise eligible for release due to resolution of the underlying State criminal charge.  Although I-200 is called a "warrant" and contains a command to arrest, those labels do not confer validity to the form.  *See Coolidge*, at 403 U.S. at 449-50 (underlying document held to be invalid was labelled a "warrant").

By analogy, to allow the use of the I-247 form to be the basis for continued detention would be similar to allowing a county child support enforcement worker to issue detainers or warrants for someone who may be in contempt of court for nonpayment of child support.  Both are civil actions which could involve significant sanctions (removal under immigration law or jail for contempt of court in a child support matter).  Under Minnesota law a warrant may be issued for contempt of court.  However, that warrant could not be issued by the enforcement worker based on their determination of probable cause, only by a judge after the information and supporting documentation is appropriately provided.

The forms also do not support a warrantless arrest.  Warrantless arrests are allowed only in limited circumstances.  Minn. Stat. § 629.34 provides:

**WHEN ARREST MAY BE MADE WITHOUT WARRANT.**

Subdivision 1. **Peace officers.** (a) A peace officer, as defined in section 626.84, subdivision 1, paragraph (c), who is on or off duty within the jurisdiction of the appointing authority, or on duty outside the jurisdiction of the appointing authority pursuant to section 629.40, may arrest a person without a warrant as provided under paragraph (c).

(b) A part-time peace officer, as defined in section 626.84, subdivision 1, clause (d), who is on duty within the jurisdiction of the appointing authority, or on duty outside the jurisdiction of the appointing authority pursuant to section 629.40 may arrest a person without a warrant as provided under paragraph (c).

(c) A peace officer or part-time peace officer who is authorized under paragraph (a) or (b) to make an arrest without a warrant may do so under the following circumstances:

   (1) when a public offense has been committed or attempted in the officer's presence;

   (2) when the person arrested has committed a felony, although not in the officer's presence;

   (3) when a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it;

   (4) upon a charge based upon reasonable cause of the commission of a felony by the person arrested;

   (5) under the circumstances described in clause (2), (3), or (4), when the offense is a gross misdemeanor violation of section 609.52, 609.595, 609.631, 609.749, or 609.821;

   (6) under circumstances described in clause (2), (3), or (4), when the offense is a nonfelony violation of section 518B.01, subdivision 14; 609.748, subdivision 6; or 629.75, subdivision 2, or a nonfelony violation of any other restraining order or no contact order previously issued by a court;

   (7) under the circumstances described in clause (2), (3), or (4), when the offense is a gross misdemeanor violation of section 609.485 and the person arrested is a juvenile committed to the custody of the commissioner of corrections; or

(8) if the peace officer has probable cause to believe that within the preceding 72 hours, exclusive of the day probable cause was established, the person has committed nonfelony domestic abuse, as defined in section 518B.01, subdivision 2, even though the assault did not take place in the presence of the peace officer.

(d) To make an arrest authorized under this subdivision, the officer may break open an outer or inner door or window of a dwelling house if, after notice of office and purpose, the officer is refused admittance.

Subd. 2. **United States Customs and Border Protection, United States Citizenship and Immigration Services officer.** An officer in the United States Customs and Border Protection or the United States Citizenship and Immigration Services may arrest a person without a warrant under the circumstances specified in clauses (1) and (2):

(1) when the officer is on duty within the scope of assignment and one or more of the following situations exist:

> (i) the person commits an assault in the fifth degree, as defined in section 609.224, against the officer;

> (ii) the person commits an assault in the fifth degree, as defined in section 609.224, on any other person in the presence of the officer, or commits any felony;

> (iii) the officer has reasonable cause to believe that a felony has been committed and reasonable cause to believe that the person committed it; or

> (iv) the officer has received positive information by written, teletypic, telephonic, radio, or other authoritative source that a peace officer holds a warrant for the person's arrest; or

(2) when the assistance of the officer has been requested by another Minnesota law enforcement agency.

ICE officers may arrest without a warrant under limited circumstances, most of which also apply to Minnesota peace officers.  The exception in Subd. 2(2) contemplates assistance requested by the Minnesota law enforcement agency,

not the other way around, and in any event would require a valid underlying basis for the warrantless arrest.[2]  There does not exist within Minnesota Statute the power for Minnesota peace officers to arrest a person for a federal civil offense at the request of ICE officers.

A warrantless arrest is only reasonable when supported by probable cause. *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012).  (Cited in *Orellana*, supra).  As noted above, the use of forms as detainers or warrants does not provide probable cause.

NCSO argues that their involvement is permitted by the 1357 (g) (10) which states:

> (10) Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State--
> > (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or
> > (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

For the reasons set out above, it does not appear that this interpretation of communication and cooperation will likely prevail on the merits.  The cooperation must comply with constitutional limits.

4. ***Dahlberg* factor #4:** The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

The Court has considered the important aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the

---

[2] There does not appear to be any reason that information transmitted from the Minnesota law enforcement entity to ICE is limited, and nothing would prevent NCSO from providing release and court hearing information to ICE to allow for arrest by ICE upon release without any hold, as discussed below.

statutes, State and Federal.  There is no question the federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. at 392.  Obviously enforcement of immigration laws is important and the voluntary communication and cooperation between local law enforcement entities and ICE is important.

5. ***Dahlberg* factor #5:** The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

The Court cannot contemplate an administrative burden for judicial supervision to ensure the Defendants are not housing individuals without valid arrest warrants or detainers.  The NCSO simply must only accept individuals for housing when there has been a proper arrest by ICE authorities under the IGSA or after a valid warrant or detainer pursuant to Minnesota law.

Although this injunction precludes the continued detention of persons based solely on Forms I-247A and I-200, it does not preclude, and the Court cannot find any arguable reason to preclude, other forms of cooperation and communication.  NCSO may continue to notify ICE regarding anyone in the jail, provide information as to release and court dates, and exchange other information between the two.

***Bond***

Minn. R. Civ. P. 65.03 requires a bond for the purposes of covering expenses that may arise from a wrongfully issued injunction.  The intent of this rule is to protect the party whose actions are restrained against loss sustained by reason of the injunction. *Hubbard Broadcasting, Inc. v. Loescher*, 291 N.W.2d 216 (Minn. 1980).  The Court cannot find that the NCSO will sustain loss by being required to have a valid arrest or valid warrant prior to detaining individuals for ICE.

## **Conclusion**

Based upon the above analysis, the Court finds that it is appropriate is issue a temporary restraining order and injunction to prevent the NCSO from detaining individuals on behalf of ICE without an arrest by an immigration officer or a valid arrest warrant or detainer pursuant to Minnesota law and Fourth Amendment protections.

***

G.J.A.



12-2-09594-4   41067824   ORRE   08-19-13

Hon. Kathryn J. Nelson, Dept. 13
August 16, 2013, 10:30 a.m.

FILED
DEPT. 13
IN OPEN COURT

AUG 1 6 2013

By _____ DEPUTY

1
2
3
4
5
6
7   IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
8   FOR PIERCE COUNTY
9
10
11  SAMUEL RAMIREZ-RANGEL, LETICIA
    GONZALES-SANTIAGO, and JOSE SOLIS-
12  LEON,
13          Plaintiff,                          NO. 12-2-09594-4
14  -vs-                                        **COURT'S ORDER GRANTING
15                                              PLAINTIFFS' CROSS-
    KITSAP COUNTY, JUSTIN T. CHILDS, in his     MOTION FOR SUMMARY
16  official capacity as a Kitsap County Sheriff's   JUDGMENT AND DENYING
    Deputy, and SCOTT C. JENSEN, in his official    DEFENDANTS' CR 56
17  capacity as a Kitsap County Sheriff's Deputy,    MOTION FOR ENTRY OF
18                                              FINAL JUDGMENT**
            Defendants.
19
20
21          THIS MATTER having come before the undersigned Judge of the above-entitled Court

22  for hearing on August 7, 2013 upon Defendants' CR 56 Motion for Entry of Final Judgment and

23  Plaintiffs' Cross-Motion for Summary Judgment, the Court has read the files and records herein

24  and is fully advised on the premises.
25
26                  **I.      CR 56(h) DOCUMENTS AND EVIDENCE**

27  1.   Declaration of Defendant Justin T. Childs, dated January 20, 2013 and filed February 15,

28       2013;

[COURT'S ORDER GRANTING PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANTS' CR 56 MOTION FOR
ENTRY OF FINAL JUDGMENT - 1

RUSSELL D HAUGE
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

2. Declaration of Defendant Scott C. Jensen, dated January 19, 2013 and filed February 15, 2013;

3. Declaration of Undersheriff Dennis Bonneville in Support of Defendants' Motion for Summary Judgment, filed February 15, 2013;

4. Declaration of Paula Galivan, filed February 15, 2013; [1]

5. Declaration of Cathy Barker, filed February 15, 2013;

6. Declaration of Skylee Robinson in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed March 18, 2013;

7. Declaration of Jose Solis-Leon in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed March 18, 2013;

8. Declaration of Samuel Ramirez in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed March 18, 2013;

9. Declaration of Stephanie C. Browning, filed March 25, 2013;

10. Declaration of Karin D. Jones in Support of Plaintiffs' Opposition to Defendants' Motion for Entry of Final Judgment, filed May 29, 2013;

11. Plaintiffs' Opposition to Defendants' CR 56 Motion for Entry of Final Judgment and Plaintiffs' Cross-Motion for Summary Judgment, filed June 14, 2013;

12. Defendants' Response to Plaintiffs' Cross-Motion for Summary Judgment, filed July 26, 2013;

13. Reply to Defendants' Response to Plaintiffs' Cross-Motion for Summary Judgment, filed August 2, 2013; and

14. Motion for Entry of Final Judgment filed May 16, 2013.

Paragraphs 3 through 13 are subject to the Court's rulings on Defendants' motion to strike.

///

///

---

[1] Replaced with Notice of Errata re Declaration of Paula Galivan, filed February 21, 2013.

RUSSELL D. HAUGE
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

## II.   FINDINGS AND CONCLUSIONS

The Court FINDS AND CONCLUDES that:

1. Based on the Declarations of Deputies Childs and Jensen, there are no genuine issues of material fact;

2. Plaintiffs' Complaint sufficiently gave Defendants notice that declaratory judgment was sought in this matter;

3. The Plaintiffs are entitled to declaratory judgment as a matter of law:  Plaintiffs have standing to bring this action under the Uniform Declaratory Judgments Act, RCW Ch. 7.24. This case presents a justiciable controversy, and in addition, important public interests support this Court's consideration of Plaintiffs' claims, particularly as there is a likelihood that the underlying conduct could recur;

4. Defendants as local law enforcement officers, under the facts of this case, do not have the authority to enforce federal immigration law nor prolong a detention to question individuals about their immigration status, citizenship status and/or country of origin, even if the officers have a reasonable suspicion or probable cause to seize and/or detain individuals for violations of law that the officers are authorized to enforce and, having determined not to arrest the plaintiffs, they prolonged the detention solely to question Plaintiffs about their immigration status.; and

5. Defendants violated Plaintiffs' rights conferred by the Washington State Constitution, Article I, Section 7, when on February 2, 2010 they prolonged the detention to question the Plaintiffs about their immigration status, citizenship status and/or country of origin.

## III.   ORDER

Therefore, IT IS HEREBY ORDERED that:

1. Defendants' CR 56 Motion for Entry of Final Judgment is hereby DENIED;

2. Plaintiffs' Cross-Motion for Summary Judgment is hereby GRANTED; and

RUSSELL D HAUGE
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

3. The Court hereby DECLARES that Article 1, § 7 of the Washington State Constitution forbids local enforcement officers from prolonging a detention to investigate or engage in questioning about an individual's immigration status, citizenship status and/or national origin.

ORDERED this 16th day of August, 2013.



The Honorable Kathryn J. Nelson
Pierce County Superior Court Judge

FILED
DEPT. 13
IN OPEN COURT
AUG 16 2013
By _____ DEPUTY

APPROVED AS TO FORM:


___/s Neil R. Wachter_____
IONE S. GEORGE, WSBA No. 18236
Chief Deputy Prosecuting Attorney
NEIL R. WACHTER, WSBA No. 23278
Senior Deputy Prosecuting Attorney
Attorneys for Defendants Kitsap County,
Scott Jensen and Justin Childs.


APPROVED AS TO FORM:


___/s Karin D. Jones_____
Maren R. Norton, WSBA No. 35435
Karin D. Jones, WSBA No. 42406
Skylee Robinson. WSBA No. 42419
STOEL RIVES, LLP
Attorneys for Plaintiffs


___/s La Rond Baker_____
Sarah A. Dunne. WSBA No. 34869
Nancy Talner, WSBA No. 11196
LaRond Baker. WSBA No. 43610
ACLU of Washington Foundation
Attorneys for Plaintiffs

[COURT'S ORDER GRANTING PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANTS' CR 56 MOTION FOR
ENTRY OF FINAL JUDGMENT - 4

RUSSELL D. HAUGE
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992  Fax (360) 337-7083
www.kitsapgov.com/pros