HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILSON RODRIGUEZ MACARENO,

    Plaintiff,

v.

JOEL THOMAS, *et al.*,

    Defendants.

Case No. 2:18-cv-00421-RAJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND DENYING DEFENDANT'S MOTION TO COMPEL**

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for a Protective Order (Dkt. # 12) and Defendants' Motion to Compel (Dkt. # 15). For the reasons stated below, Plaintiff's Motion is **GRANTED** and Defendants' Motion is **DENIED**.

## II. BACKGROUND

On February 8, 2018, Plaintiff Wilson Rodriguez Macareno alleges that he was unlawfully arrested after calling the police about a trespasser on his property. Dkt. # 1, ¶ 1. Plaintiff alleges specifically that after calling 911, the Defendant Officers with the Tukwila Police Department arrived a few minutes later and spoke with both him and the suspected trespasser. *Id*., ¶ 29. The Defendant Officers are also alleged to have asked Plaintiff for his identification, which he provided in the form of a valid Washington State driver's license. *Id*., ¶ 30.

During the encounter, Plaintiff alleges that Defendant Officer Joel Thomas relayed

ORDER – 1

his identifying information over radio dispatch as well as the information of a co–worker who was also present at the scene. *Id.*, ¶ 32. The dispatcher allegedly reported that Plaintiff was unlawfully present in the United States due to a prior order of removal or exclusion. *Id.*, ¶ 33. Plaintiff alleges, however, that none of the Defendant Officers received information about any judicial arrest warrants for him. *Id.*, ¶ 34.

Upon completing their investigation into the trespass, the Defendant Officers allegedly released the trespassing suspect with a warning not to return the property. *Id.*, ¶ 39. Plaintiff contends that, even after the Defendant Officers completed their investigation, he was not free to leave the encounter. *Id.*, ¶ 40. One of the Defendant Officers allegedly told Plaintiff that they were calling to see if immigration wanted him and would detain him until they heard back. *Id.*, ¶ 43. Thereafter, the Defendant Officers are alleged to have searched Plaintiff's person and confiscated his wallet after handcuffing him.

Defendant Officer Thomas is alleged to have accessed data transmitted from A Central Computerized Enforcement Service System Operator ("the ACCESS Operator"), which showed an administrative warrant removal from the United States for Plaintiff and contacted the Immigration and Customs Enforcement ("ICE") Law Enforcement Support Center. *Id.*, ¶¶ 45, 47. Plaintiff alleges he was already detained in handcuffs while Defendant Officer Thomas awaited communication from ICE. *Id.*, ¶ 50. At some point thereafter, ICE officer Mark Bailey allegedly contacted Defendant Officer Thomas and requested the Defendant Officers take Plaintiff into custody on ICE's behalf. *Id.*, ¶ 48. Defendant Officers are alleged to have then voluntarily transported Plaintiff to the ICE field office in Seattle. *Id.*, ¶ 49. Plaintiff alleges that soon thereafter he was transported to the Northwest Detention Center in Tacoma. *Id.*, ¶ 60.

On March 21, 2018, Plaintiff filed a Complaint against the Defendant Officers and the City of Tukwila seeking damages, an injunction, and declaratory relief for the alleged Fourth Amendment violation. Dkt. # 1. Defendants filed their Answer on April 19, 2018. Dkt. # 9. Plaintiff moved for a Protective Order on August 30, 2018 to prevent discovery

ORDER – 2

primarily relating to his immigration status, which he argues does not pertain to Defendants' liability. *See* Dkt. # 12 at 1. That same day, Defendants moved to compel responses to discovery requests regarding Plaintiff's immigration information. Dkt. # 15 at 3. The parties completed briefing on the motions on September 14, 2018. Dkt. ## 19, 20, 21, 22. These motions are now before the Court.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits parties to obtain discovery about any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Considerations regarding the scope of discoverable information include the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

Under Rule 26(c), courts may, for good cause, limit discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden" and forbid inquiry into certain matters. Fed. R. Civ. P. 26(c)(1)(D). The burden of persuasion is on the party seeking the protective order to show good cause by "demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1064 (9th Cir. 2004). "If a court finds a particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors. Corp*., 307 F.3d 1206, 1210–11 (9th Cir. 2002). Ultimately, the decision to issue a protective order lies within the court's discretion. *Childress v. Darby Lumber, Inc*., 357 F.3d 1000, 1009 (9th Cir. 2004).

## IV. DISCUSSION

Plaintiff seeks a protective order prohibiting inquiry into his immigration status, addresses, and employment history. Dkt. # 12 at 6.

ORDER – 3

The parties have diverging views on the relevance and importance of Plaintiff's immigration history to the merits of his Fourth Amendment claim. Plaintiff contends that the requested information does not bear on Defendants' liability or affirmative defenses, as any information they did not already have at the time of the seizure is not relevant to the claim. *Id*. at 4. In particular, Defendants seek the following information:

- INTERROGATORY NO. 5: Identify the date you first entered the United States, and the state and closest city to your point of entry.

- INTERROGATORY NO. 6: For any subsequent entries into or departures out of the United States, please list the date of entry/departure and the state and closest city to your point of entry/departure.

- INTERROGATORY NO. 7: Have you ever been the subject of any immigration case or hearing in any state in the United States? If so, please include the court, the date you learned about the case or hearing, and the case number. Please include any hearings or cases you are aware of that involve you in any way, regardless of whether you actually attended the hearing.

- INTERROGATORY NO. 8: Are you currently, or have you ever been, aware of any court or judge that has ordered you to be removed from the United States in any manner? If so, please list:
    a) When you became aware of the order(s);
    b) How you became aware of the order(s);
    c) When each order was entered (if known).

- INTERROGATORY NO. 13: Have you ever had a final order of removal from the country entered against you? If so, please identify the court and jurisdiction the final order was entered in.

- REQUEST FOR PRODUCTION NO. 5: Please provide copies of any orders of removal identified in response to Interrogatory No. 13, above.

- REQUEST FOR PRODUCTION NO. 6: Please provide copies of any documents relating in any way to your current immigration case, including those relating to the status of your case.

Dkt. # 15 at 3–4.

ORDER – 4

Plaintiff argues that both he and the public interest would be harmed by compelling the requested discovery. Specifically, Plaintiff claims that disclosing information about his immigration status will not only have a chilling effect on him, but also on other potential immigrants and civil rights plaintiffs who fear deportation or criminal proceedings by choosing to enforce their constitutional rights. *See* Dkt. # 12 at 3; Dkt. # 21 at 3, 6.

Defendants contend, however, that Plaintiff's immigration history is directly relevant to his Fourth Amendment claim. According to Defendants, Plaintiff was unlawfully present in the United States due to an order of removal and had an immigration violation for failure to appear for removal. Dkt. # 15 at 6. Therefore, Defendants argue they are entitled to discover evidence demonstrating that they had reasonable suspicion to believe Plaintiff had engaged in criminal behavior. *Id*. at 5–6. In Defendants' view, the discovery they now seek may confirm that the information they received about Plaintiff on the night of the encounter was accurate. *Id*. at 6. Defendants also contend that Plaintiff's immigration history is relevant to his alleged emotional distress damages. *Id.* They argue that information about Plaintiff's immigration history may show that he suffered emotional distress because of his undocumented status, the order of removal issued against him, and the likelihood that ICE would seek to send him back to his home country. *Id*. at 7. Defendants also add that the law enforcement exception to the Privacy Act of 1974, 5 U.S.C. § 552a(b)(7), applies here and entitles them to Plaintiff's immigration history. *Id*. at 8–9.

To grant a protective order, the Court must find that Plaintiff shows good cause by "demonstrating harm or prejudice that will result from the discovery." Fed. R. Civ. P. Rule 26(c); *Rivera*, 364 F.3d at 1063; *Estates of Byrd*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). Here, Plaintiff states here that permitting discovery into his immigration status would have a chilling effect on him—in particular, the concern that this discovery may be used against him in immigration proceedings. Dkt. # 21 at 6. He also notes that compelling discovery related to both his immigration status and employment history may deter future plaintiffs

ORDER – 5

from bringing meritorious claims and may result in improper probing into his immigration status and that of his family members, neighbors, and acquaintances. Dkt. # 12 at 3, 6. The Ninth Circuit has discussed the chilling effect that discovery into a plaintiff's immigration status can have and expressed it "unacceptably burdens the public interest." *Rivera*, 364 F.3d at 1065 (noting the substantial burden discovery into a plaintiff's immigration status can have on civil rights actions). Accordingly, the Court finds that good cause exists to protect Plaintiff from discovery into his information related to his immigration status given the substantial burden that would result.

Moreover, Defendants fail to show that the requested discovery is patently relevant to the substance of Plaintiff's claims. Here, Plaintiff alleges that he was wrongfully detained after the encounter relating to the trespass ended. The issue is whether the information Defendants had at the time, such as the data transmitted from the ACCESS Operator and the information from the radio dispatcher, provided reasonable suspicion for a stop and probable cause for a detainment. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusions to be drawn from the facts known to the arresting officer at the time of the arrest."); *cf. United States v. Montoya de Hernandez*, 473 U.S. 531, 559 (1985) (explaining that "*post hoc* rationalizations" have no place in Fourth Amendment jurisprudence). In opposing Defendants' motion, Plaintiff also states that he has already provided Defendants with a copy of the removal order issued by the immigration court. Dkt. # 21 at 5. Thus, further inquiry into Plaintiff's immigration history is only tenuously relevant and outweighed by the chilling and prejudicial effect that would occur.[1] *See Rivera*, 364 F.3d at 1065. As to Defendants' argument that the additional information sought is relevant to Plaintiff's emotional distress damages, Defendants have not demonstrated that the probative value of the additional information outweighs the substantial burden. Defendants already have in

---

[1] This includes information that Defendants received via subpoena from federal agencies, including the Department of Justice. *See* Dkt. # 22 at 6.

ORDER – 6

their possession Plaintiff's removal order and the testimony of the Defendant Officers who claim Plaintiff admitted to his undocumented status on the night of the incident. *See* Dkt. # 19 at 8. Finally, Defendants fail to show that the law enforcement exception of the Privacy Act permits them to seek information from private litigants. Dkt. # 15 at 9 (citing *United States v. W.R. Grace*, 401 F. Supp. 2d 1093 (D. Mont. 2005) (permitting federal prosecutors to obtain patient medical records from a federal agency in a criminal case)).

Accordingly, the Court finds that permitting discovery into Plaintiff's immigration history, as well as his employment and address history, would produce a chilling effect that could bear upon Plaintiff's ability to effectuate his rights. Additionally, the interest Defendants have in discovering additional information into Plaintiff's immigration status does not outweigh the substantial burden articulated above. Therefore, Plaintiff's Motion for a Protective Order (Dkt. # 12) is **GRANTED**. Defendants' Motion to Compel (Dkt. # 15) is **DENIED**.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for a Protective Order (Dkt. # 12) and **DENIES** Defendants' Motion to Compel (Dkt. # 15).

DATED this 29th day of January, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER – 7